**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )       Civil Action No. 10-851 (RBW) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

The plaintiff, Judicial Watch, Inc., brings this action against the United States Department of Justice ("DOJ") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), demanding the release of records concerning the DOJ's decision to dismiss civil claims that had been filed against the defendants in United States v. New Black Panther Party for Self-Defense, No. 09-cv-0065 (E.D. Pa. 2009). Complaint ("Compl.") ¶¶ 5, 18-19. Currently before the Court are the parties' cross-motions for summary judgment. Upon consideration of the parties' written submissions and the entire record in this case,[1] for the reasons explained below, the plaintiff's motion will be denied in part and with prejudice, and denied in part and without prejudice. Furthermore, the DOJ's motion will be granted in part and denied in part and without prejudice.

---

[1] The Court also considered the following written submissions in reaching its decision: (1) the Memorandum Of Law In Support Of The Department Of Justice's Motion For Summary Judgment ("Def.'s Mem."); (2) the Defendant's Statement Of Material Facts Not In Genuine Dispute ("Def.'s Facts"); (3) the Defendant's Reply And Opposition To Plaintiff's Cross-Motion For Summary Judgment ("Def.'s Reply"); (4) the Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment And In Support of Plaintiff's Cross-Motion For Summary Judgment ("Pl.'s Mem."); (5) the Plaintiff's Response To Defendant's Statement Of Material Facts Not In Genuine Dispute And Plaintiff's Statement of Material Facts Not In Genuine Dispute In Support of Plaintiff's Cross-Motion For Summary Judgment; and (6) the Plaintiff's Reply To Defendant's Opposition To Plaintiff's Cross-Motion For Summary Judgment ("Pl.'s Reply").

# I. BACKGROUND

On May 15, 2009, the DOJ filed a Notice of Voluntary Dismissal as to three defendants and a Motion for Default Judgment as to a fourth defendant in <u>United States v. New Black Panther Party for Self-Defense</u> (the "New Black Panther Party case"), an action filed in the United States District Court for the Eastern District of Pennsylvania by the Civil Rights Division of the DOJ pursuant to Section 11(b) of the Voting Rights Act, 42 U.S.C. § 1973i(b) (2006). Def.'s Mem. at 2. The district court granted the government's motion, and enjoined one of the defendants, Minister King Samir Shabazz, from displaying a weapon within 100 feet of any open voter polling location on any election day in Philadelphia, Pennsylvania, and from otherwise violating 42 U.S.C. § 1973i(b). <u>Id.</u>

By letter dated May 29, 2009, the plaintiff in this case, a "non-profit, educational foundation" that purports "to promote integrity, transparency, and accountability in government," Compl. ¶ 3, submitted a FOIA request to the DOJ seeking four categories of records related to the New Black Panther Party case, Def.'s Facts ¶ 1. In particular, the plaintiff requested that the DOJ produce the following:

> 1. Any and all records pertaining to the lawsuit under the Voting Rights Act against the New Black Panther Party for Self Defense and three of its members {Malik Zulu Shabazz, Minister King Samir Shabazz, Jerry Jackson} (records include, but are not limited to, memos, correspondence, affidavits, interviews, and records concerning default judgment, excluding court filings).

> 2. Any and all records pertaining to the decision to end the civil complaint against the New Black Panther Party for Self Defense and three of its members (records include, but are not limited to, memos, correspondence, affidavits, interviews, records concerning default judgment, excluding court filings).

> 3. Any correspondence between the [DOJ] and the New Black Panther Party for Self Defense, to include defendants [Malik Zulu

> Shabazz, Minister King Samir Shabazz, Jerry Jackson,] and/or any
> attorney(s) representing the defendants.
>
> 4. Any third-party communications concerning the New Black
>    Panther Party for Self Defense, to include defendants [Malik Zulu
>    Shabazz, Minister King Samir Shabazz, Jerry Jackson,] and/or any
>    attorney(s) representing the defendants.

Def.'s Mem., Exhibit ("Ex.") 3, (Declaration of Nelson D. Hermilla ("Hermilla Decl.")), Ex. A at 1-3. By letter dated July 15, 2010, the DOJ informed the plaintiff that there likely would be a delay in processing the request because it had received multiple FOIA requests concerning the same subject matter. Def.'s Mem. at 3. Several months later, by letter dated January 15, 2010, the DOJ further advised the plaintiff that to facilitate its response, the DOJ had interpreted the scope of the FOIA request as "limited to records concerning the [DOJ's] decision to seek a dismissal of [the] defendants" in the New Black Panther Party case. Id. The plaintiff ultimately agreed with this interpretation. Id.; Compl. ¶ 8.

Searches for responsive material were conducted by several offices within the DOJ, including the Civil Rights Division, the Office of the Attorney General, the Office of the Deputy Attorney General, the Office of the Associate Attorney General, the Office of Public Affairs, the Office of Legislative Affairs, the Office of Legal Policy, the Office of Intergovernmental and Public Liaison, and the Departmental Executive Secretariat. Def.'s Facts ¶¶ 3-5; see Def.'s Mem., Ex. 3 (Hermilla Decl.) ¶¶ 5-8; Def.'s Mem., Ex. 4 (Declaration of Vanessa R. Brinkmann ("Brinkmann Decl.")) ¶¶ 6-27. The DOJ's Office of Information Policy ("OIP") processed the request on behalf of several of the offices listed above. Def.'s Mem., Ex. 4 (Brinkmann Decl.) ¶ 4.

The results of these searches were communicated to the plaintiff by a series of letters during the first several months of 2010. On January 15, 2010, the OIP informed the plaintiff that

some offices within the DOJ had completed their searches, and that all of the records located were being withheld in their entirety pursuant to Exemption 5 of the FOIA. Def.'s Mem. at 4; Compl. ¶ 9. The plaintiff administratively appealed this determination by letter dated January 29, 2010; however, due to an inadvertent error, this letter was misdirected and the OIP did not acknowledge receipt of the appeal until April 13, 2010. Compl. ¶ 13.

By letter dated February 9, 2010, the Civil Rights Division produced some records to the plaintiff, id. ¶ 12, which included "[c]opies of pleadings and filings related to" the New Black Panther Party case, "[c]opies of e[-]mail and correspondence from the court related to" the case, and "[l]etters to the [d]efendants from the Department of Justice," Def.'s Mem., Ex. 3 (Hermilla Decl.), Ex. C at 2. The DOJ further advised the plaintiff that it would be withholding other records pursuant to FOIA Exemptions 5 and 7. Def.'s Mem. at 4. By letter dated March 26, 2010, the plaintiff administratively appealed the response of the Civil Rights Division to the OIP. Id. On that same day, the OIP sent a letter to the plaintiff stating that no responsive records were located in the searches conducted by the Office of Legislative Affairs and the Office of Intergovernmental and Public Liaison. Compl. ¶ 11.

On May 24, 2010, while the two administrative appeals were still pending, the plaintiff filed this action.[2] Nonetheless, the DOJ continued to process the plaintiff's request, and eventually notified the plaintiff that additional records were located and were being withheld pursuant to Exemptions 5 and 6. See Def.'s Mem. at 5. At this point, approximately 75 documents remain at issue.[3] Def.'s Reply at 7 n.4. The plaintiff has not raised any challenge

---

[2] The plaintiff's administrative appeals were closed after it initiated this action. Def.'s Mem. at 5 n.1.

[3] As explained in more detail later in this opinion, the documents at issue in this case are itemized in two Vaughn indices that were submitted by the DOJ. Def.'s Mem., Ex. 3 (Hermilla Decl.), Ex. D; id., Ex. 4 (Brinkmann Decl.), Ex. J. The indices arrange the documents by group and document numbers. E.g., id., Ex. 3 (Hermilla Decl.), Ex. D at 1. A number of the documents at issue are e-mails or e-mail chains, and some of those documents are further

(continued . . .)

with respect to the DOJ's assertion of Exemption 6, and the adequacy of the DOJ's searches, and the propriety of its assertion of Exemption 7 are no longer in dispute.[4]  The resolution of this case now centers on the DOJ's assertion of Exemption 5 of the FOIA as the basis for withholding responsive records.

## II. STANDARD OF REVIEW

Courts will grant a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When an agency seeking "summary judgment on the basis of . . . agency affidavits" asserts through those affidavits that it has properly withheld documents or parts of documents pursuant to a FOIA exemption, the agency's affidavits must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  Agency affidavits submitted in the FOIA context "are

_____

( . . . continued)
subdivided with both a document number and a corresponding lower case letter.  For example, document 12a-b is an e-mail chain consisting of one e-mail and a response.  Id., Ex. 3 (Hermilla Decl.), Ex. J. at 2.  For the purposes of determining the number of documents in dispute, the Court treated document 12a-b and other similarly listed records as one document.

[4]  As the Court alluded to above, the plaintiff initially questioned the adequacy of the DOJ's searches as well as the propriety of its assertion of Exemption 7.  See Pl.'s Mem. at 4-6, 21-25.  However, after reviewing the supplemental declarations submitted by the DOJ, the plaintiff now agrees that the DOJ's searches were adequate.  Pl.'s Reply at 2 n.1.  In addition, in light of a clarification regarding the date of several documents, the plaintiff no longer contests the DOJ's assertion of Exemption 7.  Id.  Finally, the plaintiff did not raise any challenge to the DOJ's assertion of Exemption 6, either in its opening brief or in earlier email correspondence with the DOJ identifying its concerns with the Department's withholdings.  See Pl.'s Mem.; Def.'s Mem., Ex. 5, (Declaration of Jacqueline Coleman Snead), Ex. A at 1-2.  As the plaintiff now concedes, "the only legal issues before [the] Court concern the scope of FOIA Exemption 5."  Pl.'s Reply at 1.

accorded a presumption of good faith." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The "'burden is on the agency' to show that the requested material falls within a FOIA exemption." Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (quoting 5 U.S.C. § 552(a)(4)(B)). Consistent with congressional intent tilting the scales in favor of full disclosure, courts impose a substantial burden on an agency seeking to avoid disclosure based on the FOIA exemptions. See Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007). Consequently, "exemptions from disclosure must be narrowly construed . . . and conclusory and generalized allegations of exemptions are unacceptable." Id. at 1114-15 (citation omitted). Nonetheless, "[w]hen disclosure touches upon certain areas defined in the exemptions . . . [,] the [FOIA] recognizes limitations that compete with the general interest in disclosure, and that, in appropriate cases, can overcome it." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

### III. LEGAL ANALYSIS

Exemption 5 provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure under the FOIA. 5 U.S.C. § 552(b)(5). In order for an agency to prevail under the privilege against disclosure of an agency document, the document's "source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."[5] Dep't of

---

[5] All of the records at issue in this case "are e[-]mails between, or notes and briefing materials created by, officials in" the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, and Civil Rights Division, Def.'s Mem. at 14 n.8, and are therefore "inter-agency or intra-agency" communications within the meaning of Exemption 5 of the FOIA. 5 U.S.C. § 552(b)(5).

Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters." Burka v. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996). In other words, if a document would not be subject to disclosure in the civil discovery context, it is exempt from disclosure under FOIA Exemption 5. Id. Exemption 5 has been construed "to exempt those documents, and only those documents, normally privileged in the civil discovery context," those privileges being (1) the attorney work-product privilege, (2) the deliberative-process privilege, and (3) the attorney-client privilege. See Citizens for Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin., 715 F. Supp. 2d 134, 138 (D.D.C. 2010) (Walton, J.) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148-49 (1975)).

Here, the DOJ relies on the attorney work-product privilege as the basis for withholding all but one of the records.[6] Def.'s Mem. at 13-19. The DOJ also claims that all of the records are separately protected by the deliberative-process privilege. Id. at 19-30. The Court will consider both of these claims in turn.

A.      The Attorney Work-Product Privilege

As recently stated by the District of Columbia Circuit, "[t]he work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or

---

[6] The DOJ's opening brief specifically asserts the work-product privilege as to all of the records in dispute except for documents 37a-c, 74a-c, and 112-114. See Def.'s Mem. at 16-18 nn. 10-13. The DOJ's declarations, however, indicate that documents 74a-c and 112-114 were in fact also withheld on that basis. See id., Ex. 3 (Hermilla Decl.) ¶ 27A(9) (document 74a-c); id., Ex. 4 (Brinkmann Decl.) ¶¶ 54-55 (documents 112-114). It is not absolutely clear to the Court whether document 37a-c was withheld pursuant to the work-product privilege, see id., Ex. 3 (Hermilla Decl.) ¶¶ 15, 27B, but it is apparent that the DOJ relies on the deliberative-process privilege as the basis for withholding this document, Def.'s Mem. at 25-26. Thus, the Court will not address the work-product privilege as to document 37a-c and instead will consider its withholding under the deliberative-process privilege.

for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" McKinley v. Bd. of Governors of the Fed. Reserve Sys., __ F.3d __, __, No. 10-5353, 2011 WL 2162896, at *9 (D.C. Cir. June 3, 2011) (citation omitted). "[I]t is essential" to the litigation process "that a lawyer work with a certain degree of privacy, free from unnecessary intrusion," Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 369-70 (D.C. Cir. 2005) ("Judicial Watch I") (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)), and the work-product privilege "provides . . . a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a . . . case, and prepare legal theories." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980); see In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) ("By ensuring that lawyers can prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, and other written materials, the privilege protects the adversary process.").

While the work-product privilege "protects such deliberative materials . . . it also protects factual materials prepared in anticipation of litigation." Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997). Thus, "[a]ny part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work[-]product doctrine and falls under Exemption 5." Id. Therefore, "factual material is itself privileged when it appears within documents that are attorney work product,"[7] and if a record may be withheld

---

[7]  This Court recently issued a decision in a criminal case discussing the distinction between "fact" work product and "opinion" work product and applying that distinction in the context of a request for materials generated by a third-party law firm in the course of its investigation into the use of performance-enhancing drugs in professional baseball. See United States v. Clemens, Criminal Action No. 10-223, __ F. Supp. 2d __, __, 2011 WL 2489743, at *20 (D.D.C. June 23, 2011) (Walton, J.).  There, the Court ordered the law firm to produce some of the materials on the grounds that they constituted "fact" work product and because the defendant had made the required showing of need.  Id.  In the FOIA context, however, "[t]he work-product privilege simply does not distinguish between factual and deliberative materials."  Martin v. Office of Special Counsel, 819 F.2d 1181, 1187 (D.C. Cir. 1987).  Thus, "if the work-product privilege protects the documents at issue here, Exemption (b)(5) protects them as well, regardless of their status as 'factual' or 'deliberative.'"  Id.

under the attorney work-product protection of Exemption 5, "then segregability is not required." Judicial Watch I, 432 F.3d at 371. While "not all work undertaken by lawyers finds protection in the work-product privilege," In re Sealed Case, 146 F.3d at 887, "the Supreme Court has made clear [that] the doctrine should be interpreted broadly and held largely inviolate," Judicial Watch I, 432 F.3d at 369.

As noted earlier, the DOJ contends that the vast majority of the records at issue in this case were properly withheld under Exemption 5 as attorney work product. See Def.'s Mem. at 13-19. The DOJ explains that it asserted the work-product "doctrine as to records that themselves are attorney work product . . . as well as records that describe or summarize that work product." Id. at 16. According to the DOJ, most of the withheld records are "classic attorney work product," such as e-mails containing draft memoranda along with related discussions and legal analyses about the New Black Panther Party case. See id. The DOJ also represents that it withheld certain records that post-date the filing of the notice of dismissal in the New Black Panther Party case "inasmuch as they were created in connection with or describe events occurring during the course of the . . . litigation." Id., Ex. 4 (Brinkmann Decl.) ¶ 54; see also id., Ex. 3 (Hermilla Decl.) ¶¶ 27E, F.

The plaintiff counters that the DOJ improperly invoked the work-product doctrine. On a general level, the plaintiff states that "from the declarations and the Vaughn index [it] is . . . unclear exactly what type of information is being withheld," and thus faults the DOJ's submissions for "not adequately identif[ying] which documents were created by Department employees acting as attorneys and which documents were created by Department employees acting as government officials." Pl.'s Mem. at 15. More specifically, the plaintiff asserts that the DOJ improperly applied the work-product doctrine to a number of individual documents.

See id. at 18-19, 21-22, 26. The plaintiff takes particular issue with the withholding of documents created after the DOJ's May 15, 2009 dismissal in the New Black Panther Party case, remarking that "the courts have never found that [the work-product doctrine] can be applied to documents created after litigation has ended for the purpose of explaining a decision." Id. at 16.

After carefully reviewing the declarations and Vaughn indices, the Court finds that the DOJ has appropriately declined to produce all of the withheld records that pre-date the DOJ's dismissal as attorney work product. As an initial observation, based on the descriptions of the documents set forth in the DOJ's submissions, the vast majority of these records fall well within the scope of the work-product doctrine as they include "e-mail messages forwarding and transferring . . . draft memoranda and draft pleadings" that "contain analyses, discussions, questions, suggestions, revisions," as well as "requests for additional legal research, requests for supporting evidence for various legal claims, and discussions [about] alternate proposals for claims of relief." Def.'s Mem., Ex. 3 (Hermilla Decl.) ¶ 27(A)(4); see id., Ex. 4 (Brinkmann Decl.) ¶ 56 (indicating that certain documents reflect "attorneys within the litigating office shar[ing] and discuss[ing] the facts of the litigation as they relate to the relevant legal provisions and giv[ing] opinions on available courses of action in the litigation"). Additionally, the withheld records contain "Civil Rights Division attorneys' private thoughts, tactics, strategy, factual and legal analyses, and appraisals of the sufficiency of the available evidence," id., Ex. 3 (Hermilla Decl.) ¶ 27A(9), and reveal the "decisionmaking process, strategies and opinions of litigators and officials within [the Civil Rights Division] on the [New Black Panther Party] litigation," id., Ex. 4 (Brinkmann Decl.) ¶ 55. Some of the withheld records also reflect "not only the work of attorneys 'on the ground,' but also the internal discussions and feedback of senior management offices." Id. Notably, all of these documents were created in "the context of

a reasonable anticipation of the motion . . . filed in" the New Black Panther Party case.  Id., Ex. 3 (Hermilla Decl.) ¶ 15; id., Ex. 4 (Brinkmann Decl.) ¶ 40.  As the District of Columbia Circuit has observed, attorney work product is "reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways."  Judicial Watch I, 432 F.3d at 370 (quoting Hickman, 329 U.S. at 510-11); see also Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) ("The primary purpose of [the work-product privilege] is to protect against disclos[ing] the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation.").

For the most part, the various arguments raised by the plaintiff are not convincing.  To begin with, the Court does not agree with the plaintiff's criticism that the Vaughn indices and declarations are "unclear" about the type of information being withheld.  Pl.'s Mem. at 15.  A "Vaughn index must adequately describe each withheld document or deletion from a released document, . . . must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant."  Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998) (internal quotation marks omitted).  Here, the DOJ has submitted two Vaughn indices.  Def.'s Mem., Ex. 3 (Hermilla Decl.), Ex. D; id., Ex. 4 (Brinkmann Decl.), Ex. J.  Upon examining these submissions, the Court generally agrees that they are sufficiently detailed, state the FOIA exemption claimed (in this case Exemption 5), and provide an adequate basis for the Court to assess whether the Exemption was appropriately invoked.  Examples of typical entries in the Vaughn indices that describe the withheld information read as follows:

- Section Chief e[-]mails to the supervising Acting [Deputy Associate Attorney General] requesting prompt discussion to respond to the Acting [Deputy Attorney General's] detailed questions and analysis of the proposed draft filings for continuing [the New Black Panther Party]

litigation on the merits, legal strategies and issues, constitutional issues, and proposed relief.

- Acting [Deputy Associate Attorney General] forwarding additional documents for [the Civil Rights Division] Appellate Section's review, including the Acting [Deputy Associate Attorney General's] analyses and opinion of the development of different approaches under consideration in [the New Black Panther Party] litigation. E[-]mail contains the Acting [Deputy Associate Attorney General's] candid assessment of legal research with substantive questions on the case law and breadth of proposed relief. This document is predecisional and contains deliberations between the [Civil Rights Division] Front Office and the request for Appellate Section's internal legal opinions and recommendations on the merits, legal strategies, constitutional issues, and potential courses of actions proposed by [the Voting] Section in the pending [New Black Panther Party] litigation for documents to be finalized for filing on May 15th.

- Supervising Acting [Deputy Associate Attorney General's] response to [the Civil Rights Division] Appellate Section attorney and resent copies of proposed draft documents for Appellate Section's review and legal advice. This is a request for Appellate Section's internal legal opinions and recommendations on the merits, legal strategies, constitutional issues, and potential courses of actions proposed by [the Voting Rights] Section in the pending [New Black Panther Party] litigation.

- Section Chief's response to his supervising Acting [Deputy Associate Attorney General] for additional information on merit and supporting evidence and summarizing several different witness statements in which witnesses are identified by name.

- Individual's Response to pending [Office of Professional Responsibility] investigation which includes author's thoughts on litigation developments and characterization of actions and discussions with colleagues in the [New Black Panther Party] litigation. Author describes discussions among officials on litigation strategy and various litigation and various litigation options and assessments of outcomes.

- E-mail discussion between attorneys in [the Office of the Associate Attorney General] and [Civil Rights Division], then within [the Office of the Associate Attorney General], regarding current status of the [New Black Panther Party] litigation and, specifically, [the Civil Right's Division's] development of a position with respect to potential actions under consideration in the case.

See id., Ex. 3 (Hermilla Decl.), Ex. D at 1, 4, 8, 15, 18-21 (documents 6, 23, 40, 60, and 86-99); id., Ex. 4 (Brinkmann Decl.), Ex. J at 2 (document 105).[8]  To the extent there may be isolated instances where the description of a document could benefit from some additional information, the DOJ has remedied this via the detailed declarations submitted by Nelson Hermilla and Vanessa Brinkmann.  See Def.'s Mem., Ex. 3 (Hermilla Decl.); id., Ex. 4 (Brinkmann Decl.). These declarations work in conjunction with the Vaughn indices by dividing the withheld documents into specific categories based on the nature of the document (the category numbers are cross-referenced accordingly in the Vaughn indices), linking each category (and in turn each document) to a particular FOIA exemption, and articulating what the documents in each group reflect and why they fall within the specified FOIA exemption.  See Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 147 (D.C. Cir. 2006) (validating the agency's combined Vaughn index/declaration approach where the declaration "tied each individual document to one or more exemptions[] and . . . linked the substance of each exemption to the documents' common elements").  Considered in this manner, the Court is satisfied that the DOJ's Vaughn indices and declarations are adequate.

The plaintiff also maintains that the work-product doctrine was inappropriately invoked as to documents 13, 14, 36, 44, 49, 50, 55, 57, 67, 68, and 69 because these documents are "informational e[-]mails" that are "nothing more than summaries of the actions that the career lawyers were taking."  Pl.'s Mem. at 18-19.  The plaintiff posits that these e-mails were improperly withheld because "the recipients [of the e-mails] were not acting as attorneys making decisions in litigation: they were acting as supervisors overseeing and staying informed about the

---

[8]  The DOJ also argues that documents 28, 60, and 86-99 are separately protected under Exemption 7, 5 U.S.C. § 552(b)(7).  Def.'s Mem. at 31-36.  Because the Court concludes that these records were appropriately withheld under Exemption 5, it need not consider this argument.

work of their employees."[9]  Id. at 19.  The Court does not agree that this is a fair characterization of these documents.  The Vaughn index reflects that, along with real-time litigation updates concerning the New Black Panther Party case, the documents withheld also convey candid assessments of the evidence and case law as well as commentary and analyses pertaining to draft memoranda and proposed court filings.  See Def.'s Mem., Ex. 3 (Hermilla Decl.), Ex. D at 2, 7-9, 11, 13.  Moreover, as the DOJ points out, all of these documents "were generated as a result of the investigations of [statutory] violations . . . within the enforcement responsibility of the Voting Section [of the Civil Rights Division] in reasonable anticipation of litigation," and none were "created outside the context of a reasonable anticipation of the motion to be filed in the" New Black Panther Party case.  Id., Ex. 3 (Hermilla Decl.) ¶ 15.  Thus, the documents were not prepared "by lawyers in the ordinary course of business or for other nonlitigation purposes," situations where "the [attorney work-product] privilege has no applicability."  In re Sealed Case, 146 F.3d at 887 (internal quotation marks omitted); see also Coastal States, 617 F.2d at 865 ("[I]f an agency were entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.").

The plaintiff's remaining arguments pertain to the documents that post-date May 15, 2009, the day that the DOJ filed its notice of voluntary dismissal in the New Black Panther Party

---

[9]  In a related argument, the plaintiff contends that documents 101b, 102, 103b-d, 104a-b, 105a-c, and 107a were improperly withheld under the deliberative-process privilege because these documents "are nothing more than status updates."  Pl.'s Mem. at 25.  The Court does not agree with this characterization.  According to the declaration of Vanessa Brinkmann, these documents "consist of back and forth discussions, forwards, and spinoff discussions, in which [Civil Rights Division] attorneys loop in supervisory officials, who then respond with any thoughts or guidance, or engage in discussion amongst themselves."  Def.'s Mem., Ex. 4 (Brinkmann Decl.) ¶ 42.  These particular documents reflect how the Civil Rights Division "briefs supervisory [DOJ] offices on the progress of the case, and litigators and supervisory attorneys exchange feedback as the component and senior Department officials consider different options."  Id., Ex. 4 (Brinkmann Decl.) ¶ 45.  Thus, to the extent the plaintiff challenges these particular records as not falling under the attorney work-product doctrine, the Court does not agree.

case.  See Pl.'s Mem. at 16, 19-22, 26; Pl.'s Reply at 5-6.[10]  Given their preparation date, the

plaintiff opines that these documents could not have been created in anticipation of litigation or

for trial and thus do not fall within the scope of the attorney work-product privilege.  Pl.'s Mem.

at 16.  The DOJ responds that this argument "elevates form over substance," Def.'s Reply at 11,

and emphasizes that these documents were withheld "only to the extent[ that] they reflected or

contained attorney work product in the New Black Panther Party case," id. at 13.  In support of

their position, both parties point to Senate of Puerto Rico ex. rel. Judiciary Comm. v. United

States, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987), where the District of Columbia Circuit stated

that "[t]he presence, or . . . absence of an ongoing investigation is but one aspect of the relevant

factual situation a court must consider in evaluating an agency's work-product claim."  Id.  The

Court will therefore consider the factual situation that led to the generation of these documents.

According to the Vaughn indices and the two declarations submitted by the DOJ, these

documents were generally created in the course of recounting specific factual and legal aspects

of the New Black Panther Party litigation for the preparation of public statements, responding to

an internal investigation about the handling of the case, or briefing officials within the DOJ about

the decisionmaking process.  See Def.'s Mem., Ex. 3 (Hermilla Decl.), Ex. D at 16-21; id., Ex. 4

(Brinkmann Decl.), Ex. J at 2-4.  In particular, documents 86-99 are memoranda from Civil

Rights Division employees compiled in response to an investigation by the DOJ's Office of

Professional Responsibility regarding the DOJ's actions in the New Black Panther Party

litigation.  Id., Ex. 3 (Hermilla Decl.) ¶ 10f.  Among other things, documents 86-99 include

"summaries of internal conversations with colleagues and with supervisors reviewing the merits,

legal strategies, and . . . candid assessments of the evidence, opinions, and analyses of the draft

---

[10]  The DOJ notes that there are twenty-three documents in this category:  83a-d, 84a-c, 85a-d, 86-99, 107a, 110-11, 113, 116, and 117a-d.  Def.'s Reply at 11 n.8.

documents, case law, facts, First Amendment constitutional issues, and various types and scope of relief." Id., Ex. 3 (Hermilla Decl.) ¶ 27F(3). Documents 83, 84, and 85 are e-mails between officials in the Civil Rights Division and the Office of Public Affairs that concern responses to media inquiries and "reflect 'back and forth' discussions and comments concerning factual and legal analysis of the" New Black Panther Party litigation. Id., Ex. 3 (Hermilla Decl.) ¶ 27E(1).

Similarly, documents 110, 111, and 117a-d are records prepared to brief DOJ senior leadership in response to Congressional and media inquiries; these documents "rehash the litigation process as they peel back to core decisionmaking processes which unfolded during the course of " the New Black Panther party case. Id., Ex. 4 (Brinkmann Decl.) ¶ 51. Document 113, only a portion of which is responsive to the plaintiff's FOIA request, consists of handwritten attorney's notes generated during a Civil Rights Division meeting that "reflect[s] a discussion of a development in the [New Black Panther Party] litigation." Def.'s Mem., Ex. 4 (Brinkmann Decl.), Ex. J. at 3; see also id., Ex. 4 (Brinkmann Decl.) ¶ 40 (explaining that the notes were "created by attorneys in the [DOJ's] senior management offices detailing their discussions on and thoughts about the [New Black Panther Party] litigation"). Document 116 is a "detailed chronology" of the DOJ's involvement in the New Black Panther Party case that presents "an unvarnished presentation of the author's thoughts on litigation decisions, actions, strategies, and recommendations as they developed, as well as ruminations and retrospective analyses on the variety of the decision[-]making process in" several DOJ offices. Id., Ex. 4 (Brinkmann Decl.), Ex. J at 3. Finally, document 107 is an e-mail sent on May 16, 2009, by an official in the Office of the Associate Attorney General to three other DOJ officials that transmitted to them the court papers filed in the New Black Panther Party case, "brief[s the]

recipients on the nature of the relief . . . [, and] provides additional comment and characterization of the relief sought." Id., Ex. 4 (Brinkmann Decl.), Ex. J at 2.

The DOJ's argument with respect to these documents has some force. As outlined above, the materials post-dating May 15, 2009, include assessments of the facts and evidence, discussions of legal strategy, and characterizations of the DOJ's internal deliberations and decisionmaking process in the New Black Panther Party litigation. Def.'s Mem., Ex. 3 (Hermilla Decl.), Ex. D at 16-21; id., Ex. 4 (Brinkmann Decl.), Ex. J at 2-4. The documents reiterate and memorialize information that is itself attorney work product, and in that sense are arguably seen as work product in their own right. See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 210 (D.D.C. 2010) (determining that e-mail messages sent after a prosecution concluded were appropriately withheld as attorney work product because the e-mails "contained internal deliberations that included consideration of privileged attorney work[]product from the prior prosecution"). Moreover, disclosing information that reveals a behind-the-scenes account of the DOJ's litigation decisions could also undermine the adversary process, something the work-product privilege is designed to protect. See e.g., Judicial Watch, 432 F.3d at 369-70; Coastal States, 617 F.2d. at 864-65.

On the other hand, in light of the circumstances in this case, it is difficult to see how these documents were "prepared or obtained because of the prospect of litigation," which is "the testing question" the Court must answer in evaluating the DOJ's work-product claim. Senate of Puerto Rico, 823 F.2d at 587 n.42; see also Safecard Servs., 926 F.2d at 1202 ("To meet th[e] standard [of being prepared 'in anticipation of litigation'] . . . the documents must at least have been prepared with a specific claim supported by concrete facts which would likely lead to litigation in mind." (citing Coastal States, 617 F.2d at 864)). Although an injunction remains in

place in the New Black Panther Party case, Def.'s Reply at 12 n.9, the filing of the motion for voluntary dismissal largely marked the end of the litigation. As such, the documents prepared subsequent to that event were not prepared in contemplation of litigation and are thus outside the scope of the work-product privilege.[11]   See Coastal States, 617 F.2d at 864 ("There is one significant limitation of the [work-product] doctrine, . . . it has uniformly been held to be limited to documents prepared in contemplation of litigation.").

Accordingly, the DOJ has adequately justified its withholding of all documents pre-dating the filing of the notice of voluntary dismissal under Exemption 5 as attorney work product, with the exception of document 37a-c. See supra at 7 n.6. Because the attorney work-product privilege protects from disclosure "the entire contents of [covered] documents – i.e., facts, law, opinion, and analysis," Judicial Watch I, 432 F.3d at 372, segregability is not required, id. at 371-72; therefore, the Court need not consider the DOJ's alternative argument that those documents covered by the privilege are also protected from disclosure by the deliberative-process privilege. See Def.'s Mem. at 19-30.

   2.   The Deliberative-Process Privilege

The deliberative-process privilege exists to protect from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Sears, Roebuck, 421 U.S. at 150 (internal quotation marks omitted). It is designed to promote "candid discussion within the agency," and improve its decisionmaking process, which advances "the agency's ability to perform its functions." Formaldehyde Inst. v. Dep't of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989) (citation omitted). The privilege ensures that government agencies are not "forced to

---

[11]   As explained later in this opinion, however, the Court concludes that these documents were appropriately withheld under the deliberative-process privilege.

18

operate in a fishbowl." Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

To qualify for protection under the deliberative-process privilege, "an agency's materials must be both 'predecisional' and 'deliberative.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." Senate of Puerto Rico, 823 F.2d at 585. "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" Petroleum Info, 976 F.2d at 1434 (quoting Coastal States, 617 F.2d at 866). The "key question" in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (quoting Dudman Commc'ns Corp. v. Dep't of Air Force, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)). Moreover, Exemption 5 "protects not only communications [that] are themselves deliberative in nature, but all communications [that], if revealed, would expose to public view the deliberative process of an agency." Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); see also Mckinley, __ F.3d at __, 2011 WL 2162896 at *7 ("Congress enacted FOIA Exemption 5 . . . precisely because it determined that disclosure of material that is both predecisional and deliberative does harm an agency's decisionmaking process."). Finally, in contrast to the work-product privilege, "[f]actual material is not protected under the deliberative[-]process privilege unless it is 'inextricably intertwined' with the deliberative material." Judicial Watch I, 432 F.3d at 372 (citation omitted).

In light of the Court's conclusions regarding the DOJ's attorney work-product claims, and as discussed earlier, see supra note 6, the documents remaining at issue are the records post-dating the filing of the motion for voluntary dismissal as well as document 37a-c. As to this

former category, post-decisional documents may still be covered under the deliberative-process privilege to the extent they "recount or reflect predecisional deliberations." Judicial Watch, Inc. v. U.S. Dep't of Treasury, __ F. Supp. 2d __, __, Civil Action No. 09-1508 (BAH), 2011 WL 2678930, at *14 (D.D.C. July 11, 2011) (citing Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice, 658 F. Supp. 2d 217, 234 (D.D.C. 2009)). Indeed, "[i]t would exalt form over substance to exempt documents in which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only 'report' on what those recommendations and opinions are." Mead Data Cent. Inc., v. U.S. Dep't of Air Force, 566 F.2d 242, 257 (D.C. Cir. 1977). The rationale for this conclusion, as the Supreme Court has recognized, is that the future quality of an agency's decisions could be affected if "the ingredients of the decisionmaking process are . . . disclosed." Sears, Roebuck, 421 U.S. at 151; see also Citizens for Responsibility & Ethics, 658 F. Supp. 2d at 234 ("Clearly, the [Supreme] Court's decision reflects a concern for the chilling effects that such disclosure would have on future agency deliberations."). Given the nature of the post-decisional documents discussed in detail earlier, see supra pp. 15-17, the Court concludes that they were appropriately withheld under the deliberative-process privilege. See Judicial Watch, __ F. Supp. 2d at __, 2011 WL 2678930 at *14 (finding that the deliberative-process privilege covered an e-mail exchange "reflect[ing] internal deliberations as to how to respond to a press inquiry regarding the agency's earlier decision to award TARP funding" to a particular institution); Judicial Watch, 736 F. Supp. 2d at 208-09 (concluding that the deliberative-process privilege covered e-mails "discuss[ing] how to respond to on-going inquiries from the press and Congress" regarding an earlier agency decision).

The remaining document for the Court to address is document 37a-c. According to the DOJ, this document is a May 11, 2009 e-mail chain "from a [Civil Rights Division] Front Office administrative assistant requesting a line attorney or a Deputy Chief in the Voting Section to provide draft language for an internal report to the Front Office management regarding the" New Black Panther Party case. Def.'s Mem., Ex. 3 (Hermilla Decl.) ¶ 27B(1); see id., Ex. 3 (Hermilla Decl.), Ex. D at 15 ("This document . . . request[s] draft language about filing the proposed motion for default judgment in [the New Black Panther Party] litigation for an internal report."). "The e[-]mail exchange initially identified the appropriate person to respond and then requested that individual to submit proposed draft language regarding" the New Black Panther Party case. Id., Ex. 3 (Hermilla Decl.) ¶ 27B(1). Id. The draft language was "preliminary" and the "ultimate goal was to prepare an internal report for final review by the [Civil Rights Division] Front Office which would subsequently be forwarded to the Office of the Attorney General as a summary of pending matters and cases in the Civil Rights Division." Id., Ex. 3 (Hermilla Decl.) ¶ 27B(2).

The description of this document convinces the Court that it was appropriately withheld under the deliberative-process privilege. Document 37a-c is predecisional as it is dated May 11, 2009, and thus preceded the filing of the motion for voluntary dismissal on May 15, 2009. In addition, the Court finds that disclosing a preliminary report of the character described above would "discourage candid discussion" within the DOJ, Access Reports, 926 F.2d at 1195, and expose to outside observation the deliberative process of the agency, Russell, 682 F.2d at 1048, events the deliberative-process privilege is designed to protect, Petroleum Info., 976 F.2d at 1434; see also McKinley, __ F.3d at __, 2011 WL 2162896 at *7-8 (discussing the purposes of the deliberative-process privilege). Accordingly, the DOJ has properly withheld this record under the deliberative-process privilege.

Finally, the DOJ represents that all of the withheld materials (including document 37a-c and the records post-dating the filing of the motion for voluntary dismissal) were reviewed and determined to "contain no reasonably segregable, non-exempt information."  Def.'s Mem., Ex. 3 (Hermilla Decl.) ¶ 16; see also id., Ex. 3 (Hermilla Decl.) ¶ 28 ("I have carefully reviewed the responsive documents and determined that [they] contain no reasonably segregable, non-exempt information; therefore, for all . . . documents, no segregation was possible."); id., Ex. 4 (Brinkmann Decl.) ¶ 60 ("[W]e carefully reviewed each of the documents to determine whether any information could be segregated for release. . . .  They are exempt in full and so contain no reasonably segregable, nonexempt information.").  As far as the Court can tell, the plaintiff does not challenge the DOJ's segregability assessment as to these documents.   Nevertheless, the DOJ bears the burden of showing that no such segregable information exists, Army Times Pub'lg Co. v. Dep't of Air Force, 998 F.2d 1067, 1071 (D.C. Cir. 1993), and "must provide a 'detailed justification' for its non-segregability," Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting Mead Data Cent., 566 F.2d at 261).

While the Court certainly appreciates Mr. Hermilla and Ms. Brinkmann's efforts, based on the level of detail provided in other parts of their declarations, the Court is convinced that the DOJ can provide a more comprehensive description as to why any non-exempt material in document 37a-c and the post-May 15, 2009 records cannot be segregated.  For example, the DOJ can "describe what proportion of the information in th[e] documents[, if any,] is non-exempt and how that material is dispersed throughout the document[s]."  Mead Data Cent., 566 F.2d at 261. As it stands now, the description of the DOJ's segregation efforts is too general for the Court, and the plaintiff, to evaluate whether any factual material in these documents is "inextricably intertwined" with the deliberative material and would thus permit the DOJ to withhold the

documents in their entirety.  <u>Johnson</u>, 310 F.3d at 776.   Accordingly, the Court will deny the DOJ's motion for summary judgment in part, and order the DOJ to submit a renewed motion for summary judgment accompanied by a declaration or other documentation that solely addresses the segregability issue as to document 37a-c and the records post-dating the filing of its notice of voluntary dismissal.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the DOJ has properly asserted Exemption 5 of the FOIA as the basis for withholding all the documents that are in dispute. However, the DOJ has not provided a sufficiently detailed justification regarding the non-segregability of document 37a-c, as well as the records post-dating the filing of its notice of voluntary dismissal.   Accordingly, the DOJ's motion for summary judgment must be denied without prejudice as to these documents but granted as to all other documents withheld under Exemption 5.  Upon submission to the Court of a renewed motion for summary judgment, along with a declaration or other documentation that addresses the segregability issue, the Court will reevaluate the DOJ's request for summary judgment.  Should the DOJ fail to file such a motion or provide adequate detail regarding why these documents cannot be segregated, the DOJ will be required to disclose the non-exempt portions to the plaintiff.

**SO ORDERED** this 4th day of August, 2011.[12]

_____
            /s/
REGGIE B. WALTON
United States District Judge

---

[12]   An appropriate Order will be issued contemporaneously with this Memorandum Opinion.