**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-851 (RBW) |
| | ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Judicial Watch, Inc., brought this action against the United States Department of Justice ("DOJ") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), seeking the release of records concerning the DOJ's decision to dismiss civil claims in the case of United States v. New Black Panther Party for Self-Defense, No. 09-cv-0065 (E.D. Pa.).  Complaint ¶ 5. The parties subsequently stipulated to the voluntary dismissal of this case with prejudice.  ECF No. 24.  Currently before the Court is Judicial Watch's motion for an award of attorneys' fees and costs.  Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that Judicial Watch's motion must be granted in part and denied in part.

## I.  BACKGROUND

The Court previously described the background of this case in its Memorandum Opinion dated August 4, 2011, and will provide only a brief recitation of that background here.  See

---

[1] In addition to the filings already identified, the Court considered the following submissions in reaching its decision: (1) the Memorandum of  Law in Support of Plaintiff's Motion for an Award of Attorneys' Fees and Other Litigation Costs ("Pl.'s Mem."); (2) the Defendant's Opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Costs ("Def.'s Opp'n"); (3) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Other Litigation Costs ("Pl.'s Reply"); (4) the Memorandum of Law in Support of the Department of Justice's Motion for Summary Judgment ("Def.'s MSJ Mem."); and (5) the Defendant's Reply and Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s MSJ Reply").

<u>Judicial Watch, Inc. v. Dep't of Justice</u>, 800 F. Supp. 2d 202, 207-09 (D.D.C. 2011).  On May

15, 2009, the DOJ filed a notice of voluntary dismissal as to three defendants and a motion for

default judgment as to a fourth defendant in <u>United States v. New Black Panther Party for Self–</u>

<u>Defense</u> (the "<u>New Black Panther Party</u>" case"), an action filed in the United States District Court

for the Eastern District of Pennsylvania by the Civil Rights Division of the DOJ pursuant to

Section 11(b) of the Voting Rights Act, 42 U.S.C. § 1973i(b) (2006).  <u>Id.</u> at 207.  By letter dated

May 29, 2009, Judicial Watch submitted a FOIA request to the DOJ, seeking the following four

categories of records related to the <u>New Black Panther Party</u> case:

1. Any and all records pertaining to the lawsuit under the Voting Rights Act against the New Black Panther Party for Self Defense and three of its members {Malik Zulu Shabazz, Minister King Samir Shabazz, Jerry Jackson} (records include, but are not limited to, memos, correspondence, affidavits, interviews, and records concerning default judgment, excluding court filings).

2. Any and all records pertaining to the decision to end the civil complaint against the New Black Panther Party for Self Defense and three of its members (records include, but are not limited to, memos, correspondence, affidavits, interviews, records concerning default judgment, excluding court filings).

3. Any correspondence between the [DOJ] and the New Black Panther Party for Self Defense, to include defendants {Malik Zulu Shabazz, Minister King Samir Samir Shabazz, Jerry Jackson} and/or any attorney(s) representing the defendants.

4. Any third-party communications concerning the New Black Panther Party for Self Defense, to include defendants {Malik Zulu Shabazz, Minister King Samir Shabazz, Jerry Jackson} and/or any attorney(s) representing the defendants.

<u>Id.</u> at 207-08.  After acknowledging receipt of Judicial Watch's request by letter dated July 15,

2010, the DOJ conducted searches for responsive records within several of its components'

offices, including the Civil Rights Division.  <u>Id.</u> at 208.

The results of the DOJ's searches were communicated to Judicial Watch in a series of letters during the beginning of 2010.  Id. at 208.  On January 15, 2010, the DOJ informed Judicial Watch that some components had completed their searches and that all of the records located thus far were being withheld in their entirety pursuant to Exemption 5 of the FOIA.  Id. Judicial Watch administratively appealed this determination by letter dated January 29, 2010.  Id. Then, on February 9, 2010, the Civil Rights Division produced some records to Judicial Watch, including "'copies of pleadings and filings related to' the New Black Panther Party case, 'copies of e-mail and correspondence from the court related to' the case, and 'letters to the defendants from the Department of Justice.'"  Id.  (citation omitted).  The DOJ further advised Judicial Watch that it would be withholding other records pursuant to FOIA Exemptions 5 and 7.  Id. The plaintiff administratively appealed this response of the Civil Rights Division by letter dated March 26, 2010.  Id.

Judicial Watch instituted this action on May 24, 2010, while its two administrative appeals were still pending.  Id. at 208-09.  The DOJ consequently closed Judicial Watch's administrative appeals, id. at 209 n.2, but continued to process the FOIA request, id. at 209.  The DOJ then issued a final determination on Judicial Watch's FOIA request on August 19, 2010, releasing no additional records and advising Judicial Watch that it was withholding several additional records pursuant to FOIA Exemptions 5 and 6.  Def.'s MSJ Mem. at 5.

On November 2, 2010, the DOJ moved for summary judgment and, in the process, produced records to Judicial Watch that it previously withheld as exempt.  Pl.'s Mem. at 2.  The DOJ produced additional records to Judicial Watch on January 10, 2011, contemporaneously with the filing of its Reply and Opposition to Plaintiff's Cross-Motion for Summary Judgment. Id.

The Court granted the DOJ's motion for summary judgment in part and denied it in part without prejudice on August 4, 2011.  Judicial Watch, 800 F. Supp. 2d at 220.  In doing so, the Court "conclude[d] that the DOJ ha[d] properly asserted Exemption 5 of the FOIA as the basis for withholding all the documents that are in dispute."  Id.  "However," the Court further determined that "the DOJ ha[d] not provided a sufficiently detailed justification regarding the non-segregability of" certain documents, and accordingly denied the DOJ summary judgment "as to these documents."  Id.  The Court explained that "[u]pon submission to the Court of a renewed motion for summary judgment, along with a declaration or other documentation that addresses the segregability issue, [it would] reevaluate the DOJ's request for summary judgment."  Id.

On September 30, 2011, the DOJ filed a renewed motion for summary judgment focusing solely on the issue of segregability.  Pl.'s Mem. at 2.  Together with this filing, the DOJ produced redacted documents to Judicial Watch which it had previously withheld in their entirety, noting that, upon further review, the documents contained "'non-exempt information [that] could be segregated.'"  Id. (citation omitted).  Judicial Watch never responded to the DOJ's renewed motion.  Instead, the parties stipulated to the dismissal of this action with prejudice on October 20, 2011.  ECF No. 24.  Judicial Watch now moves for an award of attorneys' fees and costs.

## II.  ANALYSIS

The FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  "This language naturally divides the attorney-fee inquiry into two prongs, which [Circuit] case law has long described as fee 'eligibility' and fee 'entitlement.'"  Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 524

(D.C. Cir. 2011) (quoting <u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 470 F.3d 363, 368-69

(D.C. Cir. 2006)).  "The eligibility prong asks whether a plaintiff has 'substantially prevailed'

and thus 'may' receive fees."  <u>Id.</u>  "If so, the court proceeds to the entitlement prong and

considers a variety of factors to determine whether Judicial Watch <u>should</u> receive fees."  <u>Id.</u>

(emphasis in original).  "Finally, '[a] plaintiff who has proven both eligibility for and entitlement

to fees must submit his fee bill to the court for its scrutiny of the reasonableness of (a) the

number of hours expended and (b) the hourly fee claimed.'"  <u>U.S. Dep't of Commerce</u>, 470 F.3d

at 369 (citation omitted).

## A.      Fee Eligibility

As noted, to be "eligible" for attorneys' fees, a FOIA plaintiff must have "'substantially

prevailed.'"  <u>Brayton</u>, 641 F.3d at 525.  "[A] complainant has substantially prevailed if the

complainant has obtained relief through either—(I) a judicial order, or an enforceable written

agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if

the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  Judicial Watch

invokes this latter provision—subsection (II) of § 552(a)(4)(E)(ii)—as the basis for its fee

request.  <u>See</u> Pl.'s Mem. at 3.  This provision codifies the so-called "catalyst theory" of fee

eligibility, under which "FOIA plaintiffs [are] eligible for a fee award if the lawsuit substantially

caused the agency to release the requested records," regardless of whether the plaintiff obtained

any court-ordered relief.  <u>Davis v. DOJ</u>, 610 F.3d 750, 752 (D.C. Cir. 2010).[2]  To recover

---

[2] Prior to 2001, the Circuit had applied the catalyst theory of fee eligibility in FOIA cases.  <u>Davis</u>, 610 F.3d at 752.
And although the Supreme Court rejected the catalyst theory in <u>Buckhannon Board & Care Home, Inc. v. West
Virginia Department of Health & Human Resources</u>, 532 U.S. 598 (2001), Congress subsequently abrogated
<u>Buckhannon</u> by enacting the OPEN Government Act of 2007, which established "that the catalyst theory applie[s] in
FOIA cases."  <u>Davis</u>, 610 F.3d at 752; <u>accord</u> <u>Brayton</u>, 641 F.3d at 525 ("Congress passed the OPEN Government
Act of 2007 . . . [to] abrogate[] the rule of <u>Buckhannon</u> in the FOIA context and revive[] the possibility of FOIA fee
awards in the absence of a court decree . . . . The purpose and effect of this law, which remains in effect today, was
to change the 'eligibility' prong back to its pre-<u>Buckhannon</u> form.").  Consistent with the Circuit's observation in
(continued . . . )

attorneys' fees under this theory, "a litigant must . . . show[] that the lawsuit was reasonably necessary and the litigation substantially caused the requested records to be released."  Burka v. HHS, 142 F.3d 1286, 1288 (D.C. Cir. 1998).  Although "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation," Weisberg v. DOJ, 745 F.2d 1476, 1496 (D.C. Cir. 1984), it is nonetheless a "'salient factor' in the analysis," Elec. Privacy Info. Ctr. v. DHS, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) (citation omitted); accord Pub. Law Educ. Inst. v. DOJ, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between an FOIA action and the release of documents may be taken into account in determining the existence vel non of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law.").  In addition, "[t]he causation requirement is missing when disclosure results not from the suit but from delayed administrative processing."  Short v. U.S. Army Corps of Eng'rs, 613 F. Supp. 2d 103, 106 (D.D.C. 2009); see also Church of Scientology of Cal. v. Harris, 653 F.2d 584, 588 (D.C. Cir. 1981) ("If . . . an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit.").

Here, the Court finds that Judicial Watch has adequately shown that this lawsuit was the catalyst for the DOJ's release of records, thus making it eligible for attorneys' fees under the FOIA.  To begin with, it was reasonable for Judicial Watch to believe that the records would not be unconditionally released absent a lawsuit, given the DOJ's initial invocation of Exemptions 5 and 7 in response to Judicial Watch's FOIA request.  See Chesapeake Bay Found. v. USDA, 11

---

( . . . continued)
Brayton, the Court will apply the pre-Buckhannon case law concerning fee eligibility in resolving Judicial Watch's motion.

F.3d 211, 216 (D.C. Cir. 1993) (noting that "reasonable necessity [is] determined from the
perspective of a reasonable person in the position of the requester" (citing <u>Fund for
Constitutional Gov't v. Nat'l Archives & Records Serv.</u>, 656 F.2d 856, 872 (D.C. Cir. 1981)),
<u>abrogated on other grounds by</u> <u>Buckhannon</u>, 532 U.S. at 601-02.  The DOJ has not argued
otherwise.  <u>See generally</u> Def.'s Opp'n.

      This lawsuit, moreover, substantially caused the DOJ to release records to Judicial
Watch.  In the period after the DOJ issued its final determination concerning Judicial Watch's
FOIA request on August 19, 2010, but while this lawsuit was pending, the DOJ produced a total
of 150 pages of responsive records to Judicial Watch on three instances.  <u>See</u> Pl.'s Mem. at 2;
Def.'s Opp'n at 9.  First, on November 2, 2010, the DOJ released several records to Judicial
Watch, explaining in a letter that "[i]n the course of preparing [its] Motion for Summary
Judgment in [this] case," the DOJ had "decided to make discretionary releases of withholdings"
previously deemed exempt from disclosure, and also "determined that non-exempt information
could be segregated" from a document previously withheld in full.  Pl.'s Mem., Declaration of
Michael Bekesha ("Bekesha Decl."), Exhibit ("Ex.") A (November 2, 2010 letter from
Jacqueline Coleman Snead to Michael Bekesha) at 1.  Second, on January 10, 2011, the DOJ
released two more records to Judicial Watch contemporaneously with the filing of its Reply and
Opposition to Plaintiff's Cross-Motion for Summary Judgment.  <u>See</u> <u>id.</u>, Bekesha Decl., Ex. B
(January 10, 2011 email from Jacqueline Snead to Michael Bekesha) at 1; Def.'s MSJ Reply at
20.  Third, on September 30, 2011, the DOJ sent Judicial Watch a letter explaining that "[i]n the
course of preparing [its] Renewed Motion for Summary Judgment on Segregability in [this] case,
the [DOJ] determined that non-exempt information could be segregated from twenty-one of the
twenty-four documents addressed in that motion," and enclosed copies of those redacted

documents.  Bekesha Decl., Ex. C (September 30, 2011 letter from Jacqueline Snead to Michael

Bekesha) at 1.  As the DOJ's correspondence reveal, these three productions of documents

resulted from a review of records that the DOJ conducted "in the course of preparing" litigation

documents in response to this FOIA suit, which indicates that the records would not have been

released but for this litigation.  See Fund for Constitutional Gov't v. Nat'l Archives & Records

Serv., 656 F.2d 856, 872 (D.C. Cir. 1981) ("It would . . . appear quite likely that in the absence

of this litigation and the need it imposed to specifically justify each deletion [the defendant]

would not have voluntarily undertaken to review those files."); ACLU v. DHS, 810 F. Supp. 2d

267, 274-75 (D.D.C. 2011) ("This Court has found that FOIA litigation substantially caused the

release of documents when the 'defendant's own affidavits stated that the review of the

documents from which [the released] pages were drawn was being done 'incidental to the

preparation' of one of its Vaugh[n] affidavits.'" (citation omitted)).  Further bolstering a finding

of causation is the fact that the DOJ produced the responsive documents several months after it

had ceased its administrative processing and issued a final determination concerning Judicial

Watch's FOIA request on August 19, 2010.  This sequence of events indicates that the DOJ's

disclosures did in fact result from this suit rather than "delayed administrative processing."

Short, 613 F. Supp. 2d at 106.

       In disputing Judicial Watch's eligibility for attorneys' fees, the DOJ acknowledges that it

"did . . . discretionarily release certain attorney work product from ten documents previously

withheld in full from [Judicial Watch], and concluded that non-exempt information could be

segregated from seven other documents."  Def.'s Opp'n at 6.  The DOJ also admits to disclosing

"non-substantive or already public information" to Judicial Watch during the course of this

litigation.  Id.  It maintains, however, that "these incidental releases were a mere fraction of the

material at issue in this case," and that Judicial Watch's claim is therefore "clearly insubstantial." Id. at 6-7; see 5 U.S.C. § 552(a)(4)(E)(ii)(II) (permitting FOIA plaintiff to recover attorneys' fees where there is "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial" (emphasis added)).  Yet, insofar as this contention challenges the substantiality of Judicial Watch's FOIA claim, it is properly considered under the entitlement prong of the fee analysis, not the eligibility prong.  See Brayton, 641 F.3d at 526 (indicating that the question of whether a FOIA plaintiff's claim is "not insubstantial" bears on the plaintiff's entitlement to fees); Bryant v. CIA, 742 F. Supp. 2d 90, 95 (D.D.C. 2010) (same).  For purposes of determining fee eligibility, the DOJ's "discretionary" disclosure of documents that it had previously withheld as exempt plainly constitutes "a voluntary or unilateral change in position by the agency" caused by this litigation.  5 U.S.C. § 552(a)(4)(E)(ii)(II).  It follows, then, that Judicial Watch is a substantially prevailing party eligible for attorneys' fees and costs.

**B.       Fee Entitlement**

The Court must "consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citations omitted).  "No one factor is dispositive, although the court will not assess fees when the agency has demonstrated that it had a lawful right to withhold disclosure."  Id.

**1.       Public Benefit**

In assessing "the public benefit derived from the case," Tax Analysts v. DOJ, 965 F.2d 1092, 1093 (D.C. Cir. 1992), abrogated on other grounds by Buckhannon, 532 U.S. at 601-02,

the Court must consider "both the effect of the litigation for which fees are requested and the potential public value of the information sought," Davy, 550 F.3d at 1159.  While "the release of any government document benefits the public by increasing its knowledge of its government," the Circuit has "held that Congress did not have this broadly defined benefit in mind when it amended FOIA to authorize attorneys' fees for those who substantially prevailed under 5 U.S.C. § 552(a)(4)(E)." Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (citation omitted and emphasis added).  Instead, "[t]he public-benefit prong 'speaks for an award of [attorney's fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.'" Id. (citation omitted).  "The only way to comport with this directive is to evaluate the specific documents at issue in the case at hand." Id.

As another member of this Court has observed, a "close parsing" of the Circuit's decision in Davy reveals two components of the public benefit inquiry: "First, there is the question of the potential public value of the information sought, and second, there is the very different question of the effect of the litigation for which fees are requested." Negley v. FBI, 818 F. Supp. 2d 69, 74 (D.D.C. 2011).  Regarding this first question, Judicial Watch's FOIA request sought documents relating to the DOJ's decision to dismiss civil claims in the New Black Panther Party case for the purpose of determining "[w]hether political appointees improperly interfered with prosecutorial decisionmaking."  Pl.'s Mem. at 5; see Judicial Watch, 800 F. Supp. 2d at 207-08. Given the national media coverage garnered by this issue, there can be little doubt that the information sought by Judicial Watch had potentially significant public value.  See Pl.'s Mem., Bekesha Decl., Ex. F (various news articles discussing alleged politicization of the DOJ's prosecutorial decisions in the New Black Panther Party case); see also Citizens for Responsibility & Ethics in Wash. v. DOJ, 820 F. Supp. 2d 39, 45-46 (D.D.C. 2011) (finding that

public benefit factor weighed in favor of awarding fees where the "FOIA requests at issue . . .

concern[ed] information related to a controversy of significant public import," and noting that

"various media outlets covered the story").  The DOJ does not argue to the contrary.[3]  <u>See</u> Def.'s

Opp'n at 8-11.

The second aspect of the public benefit inquiry— "the effect of the litigation for which

fees are requested," <u>Davy</u>, 550 F.3d at 1159—requires closer scrutiny.  According to the DOJ,

"none of the records produced in this litigation evidenced any political interference whatsoever

in" the <u>New Black Panther Party</u> case, or otherwise contributed "'to the fund of information that

citizens may use in making vital political choices.'"  Def.'s Opp'n at 8 (quoting <u>Cotton</u>, 63 F.3d

at 1120).  Specifically, the DOJ claims that out of the 150 pages of documents it produced to

Judicial Watch, 49 pages were redacted in full or contained no text in the body of the documents,

65 pages contained information that was already in the public domain or had been produced to

Judicial Watch prior to this lawsuit, and 34 contained "non-informative, stray phrases" that are

meaningless out of context.  <u>Id.</u> at 9-11.  Judicial Watch responds by highlighting documents

disclosed during this litigation that it claims have "substantial public value."  Pl.'s Reply at 4

(citation and alteration omitted).  A press release submitted with Judicial Watch's reply brief

explains the purported significance of these documents:

> Judicial Watch . . . has obtained documents from the Obama [DOJ] that provide
> new evidence that top political appointees at the DOJ were intimately involved in
> the decision to dismiss the voter intimidation case against the New Black Panther
> Party for Self Defense (NBPP).  These new documents, which include internal
> DOJ email correspondence, directly contradict sworn testimony by Thomas Perez,
> Assistant Attorney General for the Civil Rights Division, who testified before the

---

[3] In challenging the public benefit derived from this case, the DOJ focuses exclusively on the public value of the
documents it disclosed during the litigation.  <u>See</u> Def.'s Opp'n at 8-11.  But, as noted above, the Circuit made clear
in <u>Davy</u> that courts must consider "<u>both</u> the effect of the litigation for which fees are requested <u>and the potential
public value of the information sought</u>."  <u>Davy</u>, 550 F.3d at 1159 (emphasis added).  The DOJ would seemingly
have the Court ignore this latter consideration entirely.

U.S. Commission on Civil Rights that no political leadership was involved in the decision. . . .

The new documents include a series of emails between two political appointees: former Democratic election lawyer and current Deputy Associate Attorney General Sam Hirsch and Associate Attorney General Thomas Perrelli. For example, in one April 30, 2009, email from Hirsch to Perrelli, with the subject title "Fw: New Black Panther Party Update," Hirsch writes:

> Tom,
>
> I need to discuss this with you tomorrow morning. I'll send you another email on this shortly.
>
> If you want to discuss it this evening, please let me know which number to call and when.

Pl.'s Reply, Bekesha Decl., Ex. B (November 8, 2010 Press Release); <u>see</u> Pl.'s Mem., Bekesha Decl., Ex. A, Doc. 101 (April 30, 2009 email from Sam Hirsch to Thomas Perrelli). Another email disclosed by the DOJ during this litigation contained the subject line "Re: New Black Panther Party: Background," Pl.'s Mem., Bekesha Decl., Ex. A, Doc. 118 (April 30, 2009 email from Sam Hirsch to Steven Rosenbaum), and was sent from "political appointee Sam Hirsch . . . to Steven Rosenbaum (then-Acting Assistant Deputy Attorney General for Civil Rights in charge of voting rights) thanking Rosenbaum for 'doing everything you're doing to make sure that this case is properly resolved,'" Pl.'s Reply, Bekesha Decl., Ex. B (November 8, 2010 Press Release). And a <u>Vaughn</u> index submitted by the DOJ with its motion for summary judgment revealed that Associate Attorney General Perrelli exchanged several emails with lower-level attorneys at the DOJ regarding the <u>New Black Panther Party</u> case on May 14 and 15, 2009. <u>See</u> Def.'s MSJ Mem., Declaration of Vanessa R. Brinkmann, Ex. J (Index of OIP Withholdings) at 1-2. Notably, May 15, 2009, is the date that the DOJ dismissed claims against three of the defendants in the <u>New Black Panther Party</u> case. <u>See</u> <u>Judicial Watch</u>, 800 F. Supp. 2d at 207.

The Court finds that the foregoing emails added, at least to some degree, "'to the fund of information that citizens may use in making vital political choices.'" Cotton, 63 F.3d at 1120 (citation omitted). The documents reveal that political appointees within DOJ were conferring about the status and resolution of the New Black Panther Party case in the days preceding the DOJ's dismissal of claims in that case, which would appear to contradict Assistant Attorney General Perez's testimony that political leadership was not involved in that decision. Surely the public has an interest in documents that cast doubt on the accuracy of government officials' representations regarding the possible politicization of agency decisionmaking. And the DOJ has not shown that these particular materials were released prior to this litigation, or that the information contained therein was already in the public domain. See Judicial Watch, Inc. v. DOJ, 774 F. Supp. 2d 225, 230 (D.D.C. 2011) ("Although the court [in a FOIA attorneys' fees dispute] must consider 'the extent to which the information released . . . is already in the public domain,' the defendant bears the burden of establishing that fact." (citations omitted)). In fact, one of the DOJ's filings in this case appears to concede that two of the emails were not previously released. See Def.'s Opp'n, Declaration of Jacqueline Coleman Snead, Attachment A (Chart of Documents Provided by the DOJ to Judicial Watch on November 2, 2010, January 10, 2011, and September 30, 2011) at 1-2 (noting no "[p]rior [p]ublication" of the emails marked as document numbers 101 and 118). Accordingly, the Court finds that the public benefit factor weighs in favor of awarding fees to Judicial Watch. See Davy, 550 F.3d at 1159-60 (finding that public benefit factor weighed in favor of fee award where (1) "[a]t least one of the requested documents was not previously available to the public," (2) "the released documents . . . provid[ed] 'important new information bearing' . . . on an event of national importance," and (3) "[n]othing in the record indicate[d] that the releases . . . were not a fruit of [the] litigation;

despite [the plaintiff's] second FOIA request, the agency did not turn over any documents to him until after he filed suit").

### 2.    Commercial Benefit to the Plaintiff and Nature of the Plaintiff's Interest

"The second factor [of the fee entitlement analysis] considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." Id. at 1160. These factors, "which are often considered together, assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's fees." Id. at 1160 (quoting Tax Analysts, 965 F.2d at 1095). Judicial Watch maintains that it "is a not-for-profit, tax-exempt, educational organization" that "has no commercial interest in this case," and that its "only interest in this matter is in obtaining and disseminating information of interest to the public." Pl.'s Mem. at 6-7. Acknowledging that Judicial Watch is "a non-profit organization that disclaims any commercial interest in the records sought," the DOJ "concedes that the Court is likely to find that these factors do not weigh against" a fee award. Def.'s Opp'n at 7. The DOJ's prediction is correct. Because Judicial Watch has no commercial stake in this litigation and because it sought records from the DOJ to further the FOIA's purpose of "'contribut[ing] significantly to public understanding of the operations or activities of the government,'" U.S. Dep't of Def. v. FLRA, 510 U.S. 487, 495 (1994) (citation and emphasis omitted), the Court concludes that the "commercial benefit" and "nature of interest" elements weigh in favor of awarding fees to Judicial Watch. Cf. Judicial Watch, 774 F. Supp. 2d at 230 (holding that second and third fee entitlement factors weighed in favor of awarding fees to Judicial Watch because the purpose of its FOIA suit was "entirely non-commercial and public-oriented"); Elec. Privacy Info. Ctr. v. DHS, 811 F. Supp. 2d 216, 235 (D.D.C. 2011) ("Fee recovery is often appropriate . . . when the plaintiff is a nonprofit public interest group.").

3.        **Reasonableness of the Agency's Withholding of the Requested Documents**

The final factor of the fee entitlement analysis concerns "whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'"  Davy, 550 F.3d at 1162 (citations omitted).  "If the Government's position is correct as a matter of law, that will be dispositive.  If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus."  Chesapeake Bay Found., 11 F.3d at 216.  It is the agency's burden to "show[] that it had a[] colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit."  Davy, 550 F.3d at 1163.

To be sure, the Court has already determined that the DOJ was legally justified in withholding some documents from Judicial Watch, see Judicial Watch, 800 F. Supp. 2d at 220 (partially granting the DOJ summary judgment, holding that "the DOJ has properly asserted Exemption 5 of the FOIA as the basis for withholding all the documents that are in dispute" (emphasis added)), and Judicial Watch is consequently barred from collecting fees with respect to those documents, see Brayton, 641 F.3d at 526 (holding that "fees are . . . barred" where "the government . . . satisf[ies] the summary judgment standard by showing that there are no genuine issues of material fact in dispute and that the government was justified as a matter of law in refusing the plaintiff's FOIA request").  A question remains, however, as to whether the DOJ was legally correct in initially withholding the documents that it later disclosed to Judicial Watch after it filed this lawsuit.  The Circuit has instructed that,

> in a case such as this one, in which the Government continues to insist that it had a valid basis for withholding requested documents, the District Court must determine whether the Government's position is legally correct in assessing any claim for fees under FOIA.  In such a situation, it does not matter that information

was disclosed after initial resistance, for this does not dispose of the question whether the information sought was exempt from disclosure under FOIA.  If the Government was right in claiming that the data were exempt from disclosure under FOIA, then no fees are recoverable.

Chesapeake Bay Found., 11 F.3d at 216 (citing Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 712 n.34 (D.C. Cir. 1977) ("Certainly where the government can show that information disclosed after initial resistance was nonetheless exempt from the FOIA a plaintiff should not be awarded attorney fees under section 552(a)(4)(E).")).

The DOJ asserts that its withholding of records was correct as a matter of law because "most of the information produced in this litigation previously had been publicly disclosed," and, insofar as any new information was produced, the DOJ "was entitled to withhold it either as attorney work product under [FOIA Exemption 5], as law-enforcement records related to a then-pending investigation under [FOIA Exemption 7], or because it contained 'minimal or no information content' which FOIA does not require disclosed." Def.'s Opp'n at 12-13 (quoting Mead Data Cent. Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 n.55 (D.C. Cir. 1977)). However, regarding the documents that had already "been publicly disclosed," the Court is perplexed as to why the DOJ believes that its withholding of these documents was legally correct.  If anything, the fact that the information was already in the public domain indicates that the DOJ was legally required to disclose the documents.  See Students Against Genocide v. Dep't of State, 257 F.3d 828, 836 (D.C. Cir. 2001) ("This circuit has held that the government may not rely on an otherwise valid [FOIA] exemption to justify withholding information that is already in the 'public domain.'" (citations omitted)).  The DOJ therefore has not discharged its burden of showing that its withholding of documents that were already in the public domain was legally correct or even had a reasonable basis in law.

Turning to the documents that were newly-released during this litigation and for which the DOJ has claimed several FOIA exemptions, Judicial Watch does not dispute the propriety of the DOJ's invocation of these exemptions or otherwise respond to the DOJ's arguments. <u>See</u> Pl.'s Reply at 5-6. Accordingly, the Court will deem the DOJ's arguments conceded. <u>See</u> <u>Hopkins v. Women's Div., Gen. Bd. of Global Ministries</u>, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (noting that a court may treat as conceded arguments that a party fails to respond to in dispositive motion briefing), <u>aff'd</u> 98 F. App'x 8 (D.C. Cir. 2004), <u>cited approvingly in</u> <u>Lewis v. District of Columbia</u>, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam).

The Court therefore concludes that the DOJ has failed to show that its withholding of some documents from Judicial Watch prior to the filing of this lawsuit was legally correct or had a reasonable basis in law, but that the DOJ was legally justified in withholding other documents. Yet, because Judicial Watch has not argued that the DOJ was "'recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior,'" <u>Davy</u>, 550 F.3d at 1162 (citations omitted), and considering that the agency attempted to provide some legal justification for its withholdings to Judicial Watch at the administrative level, the Court finds that this factor weighs neither for nor against awarding fees to Judicial Watch; rather, it is neutral.

In sum, the Court concludes that three of the four fee entitlement factors weigh in favor of awarding fees to Judicial Watch. Therefore, Judicial Watch is both eligible and entitled to fees and costs, and the Court must now consider the reasonableness of Judicial Watch's requested award.

## C.     Reasonableness of Requested Fees and Costs

The FOIA permits an award of "<u>reasonable</u> attorney fees and other litigation costs" to a plaintiff that demonstrates its eligibility for and entitlement to such an award. 5 U.S.C. §

552(a)(4)(E)(i) (emphasis added).  "The usual method of calculating reasonable attorney's fees is

to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing

the 'lodestar' amount."  Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc., 136 F.3d 794,

801 (D.C. Cir. 1998).  In calculating the hours "reasonably expended" in the litigation, courts

must exclude "hours that are excessive, redundant, or otherwise unnecessary."  Hensley v.

Eckhart, 461 U.S. 424, 434 (1983).  And in determining a "reasonable hourly rate," the Court

must look to "the prevailing market rates in the relevant community, regardless of whether

plaintiff is represented by private or nonprofit counsel."  Blum v. Stenson, 465 U.S. 886, 895

(1984).  "For public-interest or government lawyers who do not have customary billing rates,

courts in this circuit have frequently employed the 'Laffey Matrix,' a schedule of fees based on

years of attorney experience that was developed in Laffey v. Northwest Airlines, Inc., 572

F.Supp. 354 (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984)."  Judicial

Watch, 774 F. Supp. 2d at 232; accord Hansson v. Norton, 411 F.3d 231, 236 (D.C. Cir. 2005)

("[T]he 'reasonable hourly rate' is guided by the Laffey matrix prepared by the U.S. Attorney's

Office.").

   "A plaintiff's overall success on the merits also must be considered in determining the

reasonableness of a fee award."  Judicial Watch v. U.S. Dep't of Commerce, 470 F.3d 363, 369

(D.C. Cir. 2006) (citing Farrar v. Hobby, 506 U.S. 103, 114 (1992)); see also Hensley, 461 U.S.

at 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the

proper amount of an award of attorney's fees.").  Thus, "where the plaintiff achieved only

limited success, the district court should award only that amount of fees that is reasonable in

relation to the results obtained," Hensley, 461 U.S. at 440, excluding "'nonproductive time or . . .

time expended on issues on which [the] plaintiff ultimately did not prevail,'" <u>Weisberg</u>, 745 F.2d

at 1499 (citation omitted).  As the Supreme Court explained in <u>Hensley</u>:

> There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.  The court necessarily has discretion in making this equitable judgment.

461 U.S. at 436-37.

Here, Judicial Watch seeks a total of $23,066.25 in attorneys' fees and $350 in litigation

costs.  Pl.'s Mem. at 10.  The requested $23,066.25 fee award includes $19,741.25 for Judicial

Watch's litigation of this case up to its dismissal, and $3,325 for its preparation of the present

motion for attorneys' fees and costs (i.e., a request for "fees on fees").  <u>See</u> Pl.'s Mem., Bekesha

Decl., Ex. D (Itemization of Attorney/Paralegal Time) at 1-2.  Judicial Watch has submitted a

<u>Laffey</u> Matrix to demonstrate the applicable hourly rate for its fee request, and an itemized bill

tracking the hours it expended in this litigation.  <u>See</u> Pl.'s Mem., Bekesha Decl, Ex. E (<u>Laffey</u>

Matrix—2003-2012), Ex. D (Itemization of Attorney/Paralegal Time).  The DOJ does not object

to the use of the <u>Laffey</u> Matrix to determine the applicable hourly rate, nor does it appear to

dispute the reasonableness of the hours expended by Judicial Watch in this matter.  <u>See</u> Def.'s

Opp'n at 13 n.8 & 13-15.  Rather, it argues that Judicial Watch's requested fee should be reduced

to reflect its minimal success in this case.  <u>See</u> <u>id.</u> at 14.  The Court agrees.

Judicial Watch's itemization reveals that it improperly seeks $19,741.25 in fees for its

litigation of this <u>entire</u> case up until its dismissal, including for "'nonproductive time'" and

"'issues on which [it] ultimately did not prevail.'" <u>Weisberg</u>, 745 F.2d at 1499 (citation omitted).

Most notably, Judicial Watch requests fees for preparing its <u>unsuccessful</u> cross-motion for

summary judgment, and for reviewing the DOJ's largely <u>successful</u> motion for summary

judgment.  <u>See</u> Pl.'s Mem., Bekesha Decl., Ex. D (Itemization of Attorney/Paralegal Time) at 1-

2.  It also seeks fees arising from its review of the DOJ's renewed motion for summary judgment, id. at 2, which it never responded to, having instead filed a stipulation of dismissal with prejudice on October 20, 2011.  ECF No. 24.  Judicial Watch cannot recover fees for these unsuccessful and "nonproductive" activities.  At most, Judicial Watch can recover the fees it incurred as a result of its initiation of this lawsuit, given that its filing of this action served as the "catalyst" for the DOJ's three, voluntary productions of documents in this case.  See supra Section II.A.  Accordingly, based on the billing rates set forth in its itemization, Judicial Watch is entitled to $1,040 for the hours it reasonably expended between May 21, 2010, and June 14, 2010, on drafting and filing the complaint and effecting service of process on the DOJ.  See Pl.'s Mem., Bekesha Decl., Ex. D (Itemization of Attorney/Paralegal Time) at 1.

While not responding directly to the DOJ's arguments, Judicial Watch maintains that it is entitled to fees for this entire litigation because it was the DOJ "who failed to satisfy its obligations under [the] FOIA prior to the filing of the [c]omplaint by failing to conduct a proper segregability analysis."  Pl.'s Reply at 6.  But, as the Court noted in its prior Memorandum Opinion partially granting summary judgment in the DOJ's favor, Judicial Watch did "not challenge the DOJ's segregability assessment."  Judicial Watch, 800 F. Supp. 2d at 219.  It was instead the Court that highlighted the need for a more detailed segregability analysis from the DOJ.  Id.  Surely Judicial Watch cannot recover fees for deficiencies in the DOJ's filings that the Court independently identified.  Although it is true that Judicial Watch caused the deficiencies to come to light by instituting this lawsuit (an action for which this Court agrees it is entitled to fees), its summary judgment briefing is not what led the Court to order the DOJ to describe its segregability efforts in greater detail.  Consequently, Judicial Watch's request for fees covering this entire litigation is unreasonable.

Judicial Watch also seeks an award of "fees on fees" in the amount of $3,325 for the time

it expended on the present motion for attorneys' fees and costs.  See Pl.'s Mem., Bekesha Decl.,

Ex. D (Itemization of Attorney/Paralegal Time) at 2.[4]  It "is settled in this circuit" that "[h]ours

reasonably devoted to a request for fees are compensable."  Noxell Corp. v. Firehouse No. 1 Bar-

B-Que Rest., 771 F.2d 521, 528 (D.C. Cir. 1985) (citing Sierra Club v. EPA, 769 F.2d 796, 811

(D.C. Cir. 1985)).  "'However, fees on fees must be reasonable, and not excessive.'"  Boehner v.

McDermott, 541 F. Supp. 2d 310, 325 (D.D.C. 2008) (citation omitted).  "Courts, therefore,

'have an obligation to scrutinize the hours spent preparing the fee petitions to insure that the total

is reasonable and that it does not represent a windfall for the attorneys.'"  Id. (citation omitted).

In keeping with these principles, the Supreme Court has explained that

> [b]ecause . . . the district court [must] consider the relationship between the
> amount of the fee awarded and the results obtained, fees for fee litigation should
> be excluded to the extent that the applicant ultimately fails to prevail in such
> litigation.  For example, if the Government's challenge to a requested rate for
> paralegal time resulted in the court's recalculating and reducing the award for
> paralegal time from the requested amount, then the applicant should not receive
> fees for the time spent defending the higher rate.

Commissioner, INS v. Jean, 496 U.S. 154, 163 n.10 (1990).

Applying these standards here, the Court must reduce Judicial Watch's requested fees on

fees award commensurate with the Court's reduction of Judicial Watch's award for the litigation

of this case.  The Court reduced the DOJ's requested award for the litigation of this case from

$19,741.25 to $1,040.  This was a reduction of $18,701.25, or roughly 5.3% of the requested

award.  Applying that same 5.3% figure to Judicial Watch's fees on fees request of $3,325 yields

a fees on fees award of $176.20.  The Court therefore deems $176.20 a reasonable award of fees

---

[4] Judicial Watch's itemization mistakenly omits the billed amount for the entry dated January 13, 2012.  See Pl.'s
Mem., Bekesha Decl., Ex. D (Itemization of Attorney/Paralegal Time) at 2.  Nevertheless, the Court was able to
determine that the billed amount for this entry was $540 by subtracting the sum of the billed entries actually listed
($22,526.25) from the total fee award sought by Judicial Watch ($23,066.25).

on fees because it takes into account the substantially reduced award granted by the Court for Judicial Watch's litigation of this case up to the time of its dismissal, but also reflects that Judicial Watch's motion for attorneys' fees and costs had at least some merit.

Finally, while the DOJ generally disputes Judicial Watch's entitlement to fees and costs, it has not directly challenged Judicial Watch's request for $350 in litigation costs, see Def.'s Opp'n at 13-15, which represents the amount Judicial Watch paid to file its complaint in this case, Pl.'s Mem., Bekesha Decl., Ex. D (Itemization of Attorney/Paralegal Time) at 2.  Given the DOJ's lack of opposition, and in view of the Court's conclusion that Judicial Watch's initiation of this action warrants an award of fees (albeit a much smaller award than the one requested), the Court will award $350 in litigation costs to Judicial Watch.

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that Judicial Watch is both eligible for and entitled to attorneys' fees and costs, but that its requested award must be reduced to an amount that is reasonable in relation to the results obtained in this case—namely, $1,216.20 in fees and $350 in costs.  Accordingly, Judicial Watch's motion for an award of attorneys' fees and costs is granted in part and denied in part.

**SO ORDERED** this 23rd day of July, 2012.[5]

REGGIE B. WALTON
United States District Judge

---

[5] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.